**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JEFFREY WILLIMAN, | : | |
| Plaintiff, | : | Case No. 3:07CV059 |
| vs. | : | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | :<br><br>: | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.   INTRODUCTION

Plaintiff Jeffrey Williman suffers from multiple medical problems including cognitive difficulties and back pain.  His impairments caused him to stop working in May 2001, and since then he has not engaged in any significant paid employment.  (Tr. 78, 300).

On September 28, 2001, Plaintiff filed applications with the Social Security Administration seeking Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  Plaintiff claimed in his applications that beginning on May 29, 2001, his

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

medical problems precluded him from working and that he was therefore under a "disability" within the meaning of the Social Security Act.  Through two rounds of administrative proceedings the Commissioner of the Social Security Administration concluded otherwise and has consequently denied Plaintiff's DIB and SSI applications.  The Commissioner's most recent non-disability decision is subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record, and the record as a whole.

## II.     PROCEDURAL HISTORY

Plaintiff's DIB/SSI applications went through a first round of administrative proceedings, including an administrative hearing and a later non-disability decision by Administrative Law Judge (ALJ) Melvin A. Padilla.  In response, Plaintiff filed a previous case in this Court during which he established that a remand for further proceedings was required under Sentence Four of 42 U.S.C. §405(g) due to certain errors in ALJ Padilla's decision.  *See* Tr. 312-338 (*Jeffrey Williman v. Commissioner of the Social Security Admin.*, 3:04CV419 (S.D. Ohio)).

On remand, ALJ Padilla conducted a second administrative hearing and issued his second decision concluding, again, that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI.  (Tr. 295-307).  ALJ Padilla's second non-disability decision is at issue in the present case, since it ultimately became the Commissioner's

most recent final non-disability decision.

Plaintiff seeks an Order reversing ALJ Padilla's second decision and remanding for an award of benefits or, at a minimum, an Order remanding this case to the Social Security Administration to correct certain errors.  The Commissioner seeks an Order affirming the ALJ's decision.

### III. STANDARDS OF REVIEW AND THE ALJ'S SECOND DECISION

The standards of review set forth in the Court's previous Decision and Entry (Tr. 314-20) and in the previous Report and Recommendations (Tr. 322-37) are incorporated herein by reference.  The standards include those applicable to judicial review of an ALJ's decision, *see* Tr. 314-20, 322-37 (and cases cited therein), and those controlling the administrative review, particularly under the sequential evaluation procedure.  *See* Tr. 324-27 (and cases cited therein).

In his second decision, ALJ Padilla considered the five step sequential evaluation by addressing five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and

>
> residual functional capacity, can the claimant perform other work available in the national economy?

*See* Tr. 296-97, 300-07; *see also* Tr. 324-25; *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). ALJ Padilla's conclusions at Steps 2 and 3 of the sequential evaluation are at issue in this case.

At Step 2 ALJ Padilla concluded that Plaintiff had the severe impairment of "limited intelligence (possible borderline intellectual functioning or mild mental retardation)." (Tr. 300). ALJ Padilla further concluded at Step 2 that Plaintiff's back problems and pain did not constitute a severe impairment. (Tr. 302).

At Step 3 ALJ Padilla found that Plaintiff's cognitive functioning did not meet or equal the criteria for mental retardation under Listing 12.05C. (Tr. 303).

ALJ Padilla's conclusion at Steps 2 and 3, together with his findings throughout his sequential evaluation, led him to conclude that Plaintiff was not under a "disability" and hence not eligible for DIB or SSI. *See* Tr. 300-07.

## IV. PLAINTIFF'S AGE, PAST EMPLOYMENT, EDUCATION, AND IMPAIRMENTS

Plaintiff was younger than fifty years old on the date of his claimed disability onset, placing him in the category of a "younger person" as defined by Social Security Regulations. *See* 20 C.F.R. §§404.1563(c), 416.963(c). By the date of the ALJ's second decision, Plaintiff's age fell between fifty and fifty-four years old, placing him in the category of a person "closely approaching advanced age" under the Regulations. *See* 20 C.F.R. §§404.1563(d), 416.963(d).

Until late May 2001, Plaintiff's past employment involved the following:

> He worked for several years at a furniture store where he worked with his father. Tr. 242, 279. He then worked at the family owned restaurant until it closed due to fire. Tr. 273, 279. He was then able to get a job through Goodwill Industries as a dockworker. He needed a job coach for the first couple of weeks to get oriented. Tr. 115, 278. Ultimately, he injured his back on this job and was unable to continue. Goodwill did not have a lighter job to place him in. Tr. 115. Mr. Williman has never completed a job application without his mother or father's assistance. Tr. 278, 412.

(Doc. #9 at 4)(Plaintiff's citations).

As to his educational background, Plaintiff's school records indicate that he graduated from high school in June 1973. (Tr. 116). From Plaintiff's perspective, his high school graduation does not accurately reflect his actual cognitive limitations. His Statement of Errors explains, "While he obtained a high school diploma in 1973, his school transcript consistently reflects typical grades of Cs, Ds, and Fs." (Doc. #9 at 3). Plaintiff also points out, in part, that his school records show he "ranked 160 out of 166 students in his graduating class with a grade point average of 1.33." *Id*. (citing Tr. 116).

Plaintiff's mother, who testified during both administrative hearings (Tr. 274-82; 409-17), informed the ALJ that when Plaintiff was in school, they did not offer special education classes. She explained that in elementary school, Plaintiff was placed with certain teachers in order to help him. (Tr. 415). And she did not know if Plaintiff's schoolwork was modified, but she believed "they allowed him to just pass through," and noted that if he did anything it was with help. (Tr. 281; *see* Tr. 114).

Plaintiff explains in his Statement of Errors that his "cognitive difficulties were

5

documented as early as 1964, when he was just two weeks short of his 10th birthday. A California Mental Maturity Test showed a total IQ score of 69. Three years later, the test was again administered and Mr. Williman's scores remained in the first percentile." (Doc. #9 at 4).

In 1992, when Plaintiff was 38 years old, he scored the following on an IQ test (Wechsler Adult Scale – Revised): Verbal IQ = 68; Performance IQ = 72; Full Scale IQ = 68. (Tr. 393). Dr. Brown, the psychologist who administered the test and evaluated Plaintiff at that time, diagnosed mild mental retardation. *Id*. In his summary, Dr. Brown wrote in part:

> Based on the psychological evaluation of ... [Plaintiff] it is this psychologist's opinion that he has sufficient capabilities to be vocationally rehabilitated. His skills are too high to receive Social Security Benefits in my opinion and he has some work related skills. First of all, he can drive an automobile. Second, his physical appearance is most appropriate, his personal interaction skills are appropriate with the possible exception that he grins or laughs when he is nervous and this will be seen considerably in his interaction patterns....

(Tr. 393). Dr. Brown also believed that Plaintiff could be employable in a warehouse setting. (Tr. 393-94). Plaintiff explains in his Statement of Errors, "It was about this time that Plaintiff obtained his job at Goodwill Industries where he worked until he injured his back in 2001." (Doc. #9 at 5).

In 2004 psychologist Dr. Martin examined Plaintiff and administered an IQ test. (Tr. 236-43). Plaintiff scored a Verbal IQ of 67, a Performance IQ of 64, and Full Scale IQ of 64. (Tr. 327). Dr. Martin considered these test scores "valid, and to accurately

6

reflect the claimant's present level of measured-intellectual performance." *Id*. Dr. Martin diagnosed mild mental retardation and acknowledged the reports of Plaintiff's adaptive behavior deficits before age 22. (Tr. 238).

Turning to Plaintiff's back problems, Plaintiff testified that he suffers from back pain "all the time" from a herniated disk. (Tr. 400). He estimated his pain level at 7 on a scale of 1 to 10. (Tr. 400-01). He has had injections in his back and spine. (Tr. 401). And when asked if the injections worked or helped, he answered "yes" but was not asked to explain the amount of help or pain relief the injections provided him. (Tr. 401). Plaintiff also takes Ibuprofen each day. When asked if Ibuprofen helped with the pain, Plaintiff answered "yes," but was not asked to explain. (Tr. 402).

Plaintiff wore a back brace when he worked. He testified that he could walk fifteen minutes before needing to sit, and stand for thirty minute before needing to sit. *Id*. He stated he had no limitations on his ability to sit. *Id*.

Plaintiff also takes a blood pressure medication. He acknowledged that none of his medications caused him side effects. *Id*.

The parties have provided informative and detailed descriptions of the remaining evidence and information in the record. *See* Doc. #9 at 1-12; Doc. #10 at 1-5. In light of this, and upon consideration of the complete administrative record, there is no need to reiterate or expand upon the parties' descriptions.

7

## V. DISCUSSION

### A. The Parties' Contentions

Plaintiff begins his contentions by describing his situation as follows:

> [He] is now 52 years old and has never lived away from his parents. His experience was sheltered by his parents for years. When they could no longer provide him work, [he] was employed by Goodwill Industries. Despite IQ scores in the mildly mentally retarded range, [he] functioned quite well on the job until he injured his back. In 2001, he was let go from his work at Goodwill Industries when he could no longer perform the lifting required. He has never found other work to which he could adapt, despite intervention by the Bureau of Vocational Rehabilitation.

(Doc. #9 at 13). Plaintiff contends that his situation is exactly the type envisioned by Listing 12.05C, the Listing for mental retardation. Plaintiff asserts, "This Listing recognizes that people with an IQ in the 60's who suffer from mild mental retardation can function in the workplace unless their abilities are compromised by an additional and significant limitation, such as back impairments...." (Doc. #9 at 13). Plaintiff thus contends, for various reasons, that the ALJ's analysis under Listing 12.05C is not supported by substantial evidence.

The Commissioner argues that substantial evidence supports the ALJ's finding at Step 3, especially the opinions of a non-treating, record-reviewing psychologist, Dr. Schwartz, who testified during the second administrative hearing. The Commissioner emphasizes:

> According to Dr. Schwartz, there was evidence in the record suggesting that Plaintiff functioned at a higher level than indicated by his IQ scores, and performance at this higher level could not be faked (Tr. 420-21). For example, testing done at the ProWork Center in January 2002

8

>  showed that Plaintiff could read at the eighth grade level, which was in the
>  low average range (Tr. 196).  And Dr. Brown's 1992 report indicated that
>  Plaintiff had generally good social skills (Tr. 393).  The ALJ further
>  considered other evidence showing that Plaintiff could 'cope' with common
>  life demands, including evidence that Plaintiff received passing grades in
>  regular classes, graduated from high school, was able to hold at least
>  unskilled employment in several jobs for many years, obtained a driver's
>  license, and drove regularly, and had his own bank account and wrote
>  checks (Tr. 303, referring to 116-18, 190, 241, 393-93, 411).  Based on this
>  evidence, the ALJ properly concluded that Plaintiff did not have deficits in
>  adaptive functioning and thus did not satisfy the definitions of mental
>  retardation in the introductory paragraph of Listing 12.05.

(Doc. #10 at 8-9).

The Commissioner also points out that even if the record contains other contrary evidence, the ALJ's decision is not subject to reversal because substantial evidence supports the ALJ's findings.

>  **B.     Analysis**

Plaintiff's Step-3 arguments are potentially dispositive of his disability status since a finding in his favor at Step 3 would have streamlined the ALJ's evaluation.  *See Combs v. Comm'r. of Social Security*, 459 F.3d 640, 649 (6th Cir. 2006)(en banc).  Streamlined because an adult whose impairments meet or equal the criteria of a Listing is presumed to be under a disability and is granted benefits without further evaluation.  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).  Listing 12.05(C)'s criteria is therefore the doorway to the required analysis.  This Listing provides:

>  Mental retardation refers to a significantly subaverage general
>  intellectual functioning with deficits in adaptive functioning initially
>  manifested during the developmental period; i.e., the evidence demonstrates
>  or supports onset of the impairment before age 22....

9

    1.       A valid verbal, performance, or full scale IQ of 60 through 70; and

    2.       A physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Subpart P, Appendix., 12.05(C).

The ALJ's evaluation of whether Plaintiff met or equaled the criteria of Listing 12.05C relied heavily on the opinions of Dr. Schwartz. As noted above, Plaintiff's scores on California Mental Maturity testing resulted in the IQ scores of below 70, or in the lowest one percentile of the population. The ALJ did not directly comment on the validity of the IQ scores, only on their meanings. He acknowledged that Dr. Schwartz "did not directly challenge the validity of the IQ tests." (Tr. 301). The ALJ addresssed those test scores as follows: "Dr. Schwarz indicated that those tests were more a measure of achievement rather than IQ, and those scores would not seem dispositive in determining the exact level of the claimant's intellect." (Tr. 301). The ALJ failed to mention that when Dr. Schwartz was asked to consider Plaintiff's specific test results on the California Test of Mental Maturity, he indicated that the results were consistent with mild mental retardation and with the IQ scores obtained in 1992 and 2004. (Tr. 423). The ALJ erred by overlooking or ignoring this part of Dr. Schwartz's testimony and by instead focusing on testimony that tended to support a non-disability finding. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)("ALJ must consider all the record evidence cannot 'pick and choose' only the evidence that supports his position."); *see also Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984); *Kuleszo v. Barnhart*, 232 F.Supp.2d 44,

57 (S.D.N.Y. 2002).

The ALJ erred further by not evaluating Dr. Schwartz's testimony under the legal criteria required by the Regulations. The Regulations required the ALJ to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. §404.1527(d). More specifically the Regulations required the ALJ to apply certain factors – supportability, consistency, specialization, *etc*. – to Dr. Schwartz's opinions. *See* 20 C.F.R. 404.1527(d)(3)-(5). The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see* also 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); §404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

Social Security Ruling 96-2p provides ALJs with definitive guidance on how to apply the regulatory factors:

> The Regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.
>
> For this reason, the opinions of State agency medical and psychological consultants ... can be given weight only insofar as they are supported by evidence in the case record, considering such factors as ... supportability..., consistency..., and any explanation for the opinion provided by the State agency medical or psychological consultant.... The

11

>  adjudicator must also consider all other facts that could have a bearing on
>  the weight to which an opinion is entitled, including any specialization of
>  the State agency medical or psychological consultant.

1996 WL 374188 at *4.

The ALJ's decision contains no discussion of any of the regulatory factors applicable to weighing medical source opinions, including Dr. Schwartz's opinions and the opinions of Drs. Brown or Martin, *see* Tr. 295-307, and consequently, the ALJ erred by not applying the correct legal criteria to evaluate these medical source opinions. *See* 20 C.F.R. 404.1527(d), (f). In addition, the ALJ thought the record as a whole suggested that "the IQ scores may have been underestimates of Plaintiff's true intelligence, possibly because he is nervous or uncomfortable in test situations." (Tr. 301). No physician of record has suggested this to be the case.

In sum, no physician of record has questioned the validity of Plaintiff's IQ scores, and to the extent that the ALJ found those scores invalid, his finding did not apply the correct legal criteria to Dr. Schwartz's opinion and is not otherwise supported by substantial evidence.

As noted above, the second prong of Listing 12.05C requires a physical or other mental impairment imposing an additional and significant work-related limitation of function. Listing 12.05C, Appendix 1 to Subpart P, Part 4. In this case, the ALJ found that in addition to his cognitive difficulties, Plaintiff was limited to medium work that did not involve heights, hazards, repetitive bending, or repetitive pushing and pulling. (Tr. 303). The ALJ concluded that back impairment was not a severe impairment, despite

12

these additional limitations. In this manner the ALJ avoided discussion of Plaintiff's back impairment at Step 3, particularly whether it constituted an additional deficit in adaptive functioning under Listing 12.05C(2). *See* Tr. 303. The ALJ employed this same problematic method of reasoning in his first non-disability decision. *See* Tr. 335.

   The ALJ's finding at Step 2 that Plaintiff's back problems do not constitute a severe impairment is not supported by substantial evidence. Multiple physicians of record have documented that Plaintiff's back problems were more than a slight abnormality that would have no more than a minimal effect on Plaintiff's ability to work. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."). For example, neurosurgeon Africk, who evaluated Plaintiff in May, 2001, indicated that he should "try to avoid heavy lifting, bending and twisting in his job." (Tr. 156). A functional capacity evaluation suggested that Plaintiff should not perform more than light work exertionally. (Tr. 173-82). The nonexamining State agency physicians reviewing Plaintiff's claim thought that he could perform only light work exertionally. (Tr. 184-88). Even the consultative examiner, Dr. Wunder, thought that Plaintiff could perform only a limited range of medium work, lifting 35-50 pounds occasionally. (Tr. 221). The ALJ, moreover, erred by not evaluating any of these physicians' opinions under the legal criteria mandated by the Regulations. *See* Tr. 301-05. Lastly, the physicians of record agree, at least implicitly, that Plaintiff has a severe back impairment that prevents him from performing more than medium work

13

exertionally.

Accordingly, Plaintiff's challenges to the ALJ's decision are well taken.

## VI. REMAND FOR PAYMENT OF BENEFITS IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991); *see Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is warranted in the present case, because the evidence overwhelmingly shows that Plaintiff meets or equals all the criteria of Listing 12.05(C), or the evidence in support of this Listing criteria is strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Perhaps the strongest evidence opposing the conclusion that Plaintiff does not meet or equal the criteria was Dr. Schwartz's testimony. His testimony, however, confirms the validity of Plaintiff's IQ scores, which were below 70 and thus met Listing 12.05C. Dr. Schwartz did not directly address the severity of Plaintiff's back problems as an additional deficit of adaptive functioning. His testimony therefore constitutes weak evidence as opposed to the strong evidence showing that Plaintiff has a severe back impairment and valid IQ scores under 70. *See* Tr. 417-30.

As to Plaintiff's daily activities, the extent of those activities (driving, store

purchases, prior jobs, etc.) do not conflict with the strong evidence showing he meets or equals Listing 12.05C. *See Brown v. Secretary of Health and Human Services*, 948 F.2d 268, 270 (6th Cir. 1991) (the following facts not deemed inconsistent with IQ of 68: "Mr. Brown is able to use public transit; he has a driver's license; he visits friends; he is able to make change at a grocery store; he can do his own laundry and clean his room; he completed the sixth grade; he has a limited level of reading comprehension (Mr. Brown stated that he can follow a road atlas, and a friend testified she had seen him reading a newspaper); and as a truck driver, Mr. Brown recorded mileage, the hours he worked, and the places he drove."); *cf. Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)(Posner, J.)("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home.... The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other places of paid work.").

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability finding be vacated;

2. Plaintiff's case be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. §405(g) for payment of DIB and SSI consistent with the Social Security Act; and

     3.     The case be terminated on the docket of this Court.


March 10, 2008

                                                      s/ Sharon L. Ovington  
                                                        Sharon L. Ovington  
                                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).